IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

EMIL JAMES PAYNE                          §
                                          §
        Plaintiff,                        §
                                          §
v.                                        §        CASE NO. 4:03-CV-467
                                          §
SOUTHWESTERN BELL                         §
TELEPHONE, L.P.                           §
                                          §
        Defendant.                        §

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the court on Defendant Southwestern Bell Telephone, L.P.'s Motion

for Summary Judgment, filed on March 17, 2005 [Dkt. # 29], Plaintiff's Response, filed on April

25, 2005 [Dkt. # 43], and Defendant's Reply, filed on May 2, 2005 [Dkt. # 47].  Upon

consideration of the parties' written submissions, exhibits, affidavits, and the applicable law, the

court is of the opinion that Defendant Southwestern Bell Telephone, L.P.'s Motion for Summary

Judgment should be GRANTED in part and DENIED in part.

**I.  BACKGROUND**

Plaintiff Emil James Payne ("Payne"), born on December 28, 1943 was first hired by

Southwestern Bell Telephone, L.P. ("Southwestern Bell") in 1964.  Payne Depo. at p. 6, ln. 23-

24; p. 16., ln. 8.  Payne worked for Southwestern Bell from May 6, 1964 until April 12, 1980,

when he was terminated for "misconduct."[1]  *Id*. at p. 25, ln. 7-10; p. 32, ln. 8-10.  Payne was later

---

[1]  According to Payne, no one at Southwestern Bell ever explained what constituted this "misconduct."  Payne Depo. at p. 25, ln. 9-13.

1

rehired by Southwestern Bell on January 19, 1998 as a cable splicer.  *Id*. at p. 29, ln. 14-17.

Following his rehire, Payne was informed he would need to have five years of continuous service in order to bridge his prior service for pension eligibility purposes.  *Id*. at Ex. 1; p. 31, ln. 16-p. 32, ln. 23.  According to the "Terms of Employment Summary," Payne's new date of rehire was established as January 19, 1998.  *Id*.  Therefore, Payne's past service from May 6, 1964 through April 12, 1980, would be "bridged" on January 19, 2003.  *Id*.

In June 2000, Payne was promoted to the position of "contract coordinator," a management position.  *Id*. at p. 41, ln. 10-17.  Upon his promotion, Area Manager Charles "Eddie" Malinowsky  served as Payne's direct supervisor.  *Id*. at p. 44, ln. 5-7.  James Winfrey served as Malinowski's direct supervisor.  Winfrey Aff. at ¶ 3.  At the recommendation of Malinowsky, Winfrey authorized the hiring of Payne as a cable splicer in 1998 and authorized Payne's promotion to the first line manager position of "contract coordinator" in 2000.  *Id*. at ¶¶ 3, 4.

According to Winfrey, "[i]n the fourth quarter of 2002, Southwestern Bell initiated a reduction in force across many areas of the business."  Winfrey Aff. at ¶ 5.  Weldon Dossey, Winfrey's direct supervisor, informed Winfrey that of the seventy-eight first line managers, eighteen would be considered surplus.  *Id*.  To conduct the reduction in force, Winfrey developed a four-part spreadsheet that evaluated and compared the first line managers on the basis of their (1) performance, (2) education, (3) service and (4) potential.  *Id*. at ¶ 6; Ex. 1, SWBT 1557 Spreadsheet.  Winfrey then ranked the managers according to their scores.  *Id*.  Malinowsky conducted the evaluations of employees under his direct supervision, which included Payne.  *Id*.

For the four criterion, Payne's scores were the following:  performance, 30; education,

10; service, 10; potential, 15.  *Id.* at ¶¶ 7, 8.  Based on his scoring, and in comparison with other managers, Payne was ranked as an "average performer" and was the eighth person "below the line" that divided employees that Southwestern Bell would retain and those that would be part of the surplus.  *Id.* at 10.  Payne received his surplus notification letter on November 13, 2002.  Def.'s Mot. for Summ. J. at Ex. F.  The letter informed Payne that his last day on the payroll would be December 13, 2002.  *Id.*  At the time of Payne's surplus, he was 58 years old.  According to Payne, he was replaced by Ken Fanning, another coordinator in his early 50's.[2]  Payne Depo. at p. 107, ln. 20 –  p. 108, ln. 16.

## II.  SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to isolate and dispose of factually insufficient claims or defenses.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The substantive law identifies which facts are material.  *See id.* at 248.  The party moving for summary judgment has the burden to show that there is no genuine issue of fact and

---

[2]  There is a dispute as to whether Payne's position was filled.  According to Southwestern Bell, Payne "was not replaced, instead his job duties were distributed among the remaining contract coordinators under Malinowsky's supervision."  Winfrey Aff. at ¶ 12.  Payne's Deposition testimony states Mr. Fanning, another coordinator, was brought in from Dallas and "sat at [Payne's] desk."  Payne Depo. at p. 107, ln. 20-25.  Indulging all inferences in favor of the Plaintiff, the court will accept that Payne was replaced by a younger worker.

that it is entitled to judgment as a matter of law.  *See id.* at 247.  If the movant bears the burden

of proof on a claim or defense on which it is moving for summary judgment, it must come

forward with evidence that establishes "beyond peradventure *all* of the essential elements of the

claim or defense."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  But if the

nonmovant bears the burden of proof, the movant may discharge its burden by showing that there

is an absence of evidence to support the nonmovant's case.  *See Celotex*, 477 U.S. at 325.  In this

instance, the movant is not required to offer evidence to negate the nonmovant's claims.  *See*

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Once the movant has carried its burden,

the nonmovant "must set forth specific facts showing that there is a genuine issue for trial."  FED.

R. CIV. P. 56(e).  The nonmovant must adduce affirmative evidence.  *See Anderson*, 477 U.S. at

257.

Summary judgment evidence is subject to the same rules that govern admissibility of

evidence at trial.  *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 175-76 (5th

Cir. 1990).  In considering a motion for summary judgment, the court cannot make credibility

determinations, weigh evidence, or draw inferences for the movant.  *See Anderson*, 477 U.S. at

255.  The evidence of the nonmovant is to be believed, and all justifiable inferences are to be

drawn in the nonmovant's favor.  *See id.*

## III.  ADEA

Under the ADEA, it is unlawful for an employer to discharge or otherwise discriminate

against an individual because of that person's age.  *See* 29 U.S.C. § 623(a)(1);  *Roberson v. Alltel*

*Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004).  Absent direct evidence of age discrimination,

4

ADEA claims are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 93 S. Ct. 1817 (1973), as modified by *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).  *See Machinchick v. PB Power, Inc.*, 398  F.3d 345, 352 (5th Cir. 2005).

In an employment discrimination case, the plaintiff bears the initial burden of establishing a *prima facie* case of unlawful discrimination.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).  To establish a *prima facie* case of age discrimination, the plaintiff must show that: (1) he was discharged; (2) he was qualified for his position; (3) he was within the protected class; and (4) he was replaced by someone outside the protected class, replaced by someone younger, or otherwise discharged because of his age.  *See Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999).  In cases where the employer alleges that the termination resulted from a job elimination or a reduction in force, the plaintiff can satisfy the fourth element with direct or circumstantial evidence tending to indicate that age was a motivating factor for the employer's decision.  *See Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996); *Amburgey v. Corhart Refractories Corp., Inc.*, 936 F.2d 805, 812 (5th Cir. 1991).  Establishing a *prima facie* case creates a presumption of discrimination, and the burden shifts to the employer to proffer a legitimate, non-discriminatory reason for the employment action.  *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004).  Payne has established the four elements of a *prima facie* case.[3]

---

[3]  (1) Payne was discharged.  Def.'s Mot. for Summ. J. at Ex. F, Surplus Notification Letter, dated November 13, 2002; (2) Payne was qualified for his position.  Payne Depo. at p. 53, ln. 15-25 (Malinowsky's performance evaluations of Payne were favorable; Malinowsky even commended Payne's performance as "outstanding."); (3) Payne, age 58, was within the protected class.  Payne Depo. at p. 6., ln. 23-24; (4) Payne was replaced by a younger worker.  Payne Depo. at p. 107, ln. 20-25.

Southwestern Bell has articulated a legitimate, non-discriminatory reason for Payne's termination – a reduction in force.  *See E.E.O.C. v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996) (reducing work force is a legitimate, non-discriminatory reason for adverse employment action).  Therefore, the presumption of age discrimination established by Payne's *prima facie* case falls away, and the burden shifts back to Payne to raise a fact issue either that Southwestern Bell's reasons are not true but are instead a pretext for age discrimination (pretext alternative), or that Southwestern Bell's reasons, while true, were not the only reasons for its conduct and another "motivating factor" was Payne's age (mixed motives alternative).  *See Rachid*, 376 F.3d at 312.

*1.  Pretext Alternative*

In the Fifth Circuit, "[i]n order to succeed on a discrimination claim in a [reduction in force] situation, it is incumbent upon the terminated employee to prove that he was 'clearly better qualified' than the retained employees."  *Jarvis v. Cirrus Logic, Inc.*, 2004 WL 1161905 at *1 (citing *Manning v. Chevron Chem. Co.*, LLC, 332 F.3d 874, 882, n. 4 (5th Cir. 2003)).  In order to establish a fact issue regarding relative qualifications, "a plaintiff must provide sufficiently specific reasons for his opinion; mere subjective speculation will not suffice."  *Nichols*, 81 F.3d at 42.  Payne argues that his ranking would have been higher had Malinowsky and Winfrey included Payne's previous service at Southwestern Bell in Payne's score.  Pl.'s Resp. at 14-15.  However, Payne's argument appears to center around how he was unfairly scored, not how he was "clearly better qualified" than the employees retained by Southwestern Bell.  In fact, Payne argues that had he been credited with his past years of service, he would have only been "tied" with Ken Fanning, Vickie Neumann and fourteen other coordinators, who received a score of 75.

6

*Id*.  This evidence does not indicate Payne was "clearly *better* qualified" than these employees. Payne argues that a score of 75 would have surpassed Duane Wells's score of 70.  *Id*. at 14. However, a five point differential does not appear to indicate "clearly better" qualifications. Also, Payne's assessment of the twenty contract coordinators' scores of 75 or below is not only incomplete[4], the argument highlights how Payne was "equally rated" in comparison to these employees, not how he was "clearly better qualified."  *Id*.  Regarding Gary Germain, Ernie Clayton, Vickie Neumann and Timothy Martin, Payne only testified to his belief that he had different, or more, experience than these employees.  Payne Depo. at p. 116, ln. 22- p.118, ln. 17. However, "greater experience alone will not suffice to raise a fact question as to whether one person is clearly more qualified than another."  *Nichols*, 81 F.3d at 42; *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 959 (an "attempt to equate years served with superior qualifications. . .[is] unpersuasive.") Therefore, again, Payne does not offer evidence that he was "clearly better qualified" than the retained employees.

Payne repeatedly argues he has more experience than his scoring reflected.  Pl.'s Resp. at 14-15.  However, without more, Payne has not demonstrated that he is "clearly better qualified" than the employees retained by Southwestern Bell after the reduction in force.  As a result, Payne has cannot rebut Southwestern Bell's legitimate, non-discriminatory reason for terminating Payne – a reduction in force.

Payne also argues that because Defendant's surplus ranking method was subjective, the ranking system is evidence of pretext.  Pls.' Resp. at 15-16.  However, "the mere fact that an

---

[4]  Payne only haphazardly identifies categorical scores for these twenty individuals.  He never indicates how many scored below 75, and he does not offer complete scores for the court's evaluation.  Pl.'s Resp. at 14.

employer uses subjective criteria is not . . . sufficient evidence of pretext." *Manning v. Chevron Chem. Co.*, LLC, 332 F.3d 874, 882 (5th Cir. 2003).

The court finds Payne has failed to raise a genuine issue of material fact with respect to his claim that Southwestern Bell's reduction in force was a pretext for unlawful age discrimination.

*2. Mixed Motives Alternative*

However, despite the validity of an employer's reasons for its employment action, if the plaintiff "demonstrates that age was a motivating factor in the [employer's decision to terminate him], it then falls to the [employer] to prove 'that the same adverse employment decision would have been made regardless of discriminatory animus.'" *Rachid*, 376 F.3d at 312.

Payne argues that discrepancies in the spreadsheets produced during discovery reveal that Payne's "alleged 'average' ranking was motivated by his age." Pl.'s Resp. at 16. However, examination of the two spreadsheets reveals that Payne's scores were unaltered from the initial to the final rankings. Def.'s Mot. for Summ. J. at Ex. B., SWBT 1557; Pl.'s Resp. at Ex. E, SWBT 1568-1569. Without further evidence of how other scores were altered and how those changes critically affected Payne's position in the rankings, the spreadsheets appear to be nothing more than evidence of the evaluative process.

Payne's only evidence of age discrimination is his subjective belief that his age, rather than his scoring, motivated Defendant's decision to terminate Payne's employment. Payne Depo. at p. 110, ln. 10-14. ("Q: Why do you believe that you were discriminated against on the basis of your age? A: Because my age was when I got close to retirement that they put me out. That's just my thoughts."); *Id.* at p. 111, ln. 17-23. (Q: [W]hy else do you believe you were

8

discriminated against because of your age?  A: The company was trying to do all they could to cut corners for their bottom line dollar-wise, and they saved some money by not letting me finish up my tour and become eligible for retirement.").  Otherwise Payne's deposition testimony reveals that no one made ageist comments in the workplace, Payne never complained about age related comments in the work place, nothing happened before the surplus that made Payne feel like he was being discriminated against because of his age, and that Payne had no complaints prior to the surplus that any actions were taken against him because of his age.  *Id*. at p. 112, ln. 5-24.

The court finds Payne has failed to meet his burden of proving age was a "motivating factor" in Southwestern Bell's decision to terminate him.  Because Payne also failed to carry his burden of proving that Southwestern Bell's reduction in force was a pretext for age discrimination, the court hereby GRANTS Southwestern Bell's Motion for Summary Judgment with respect to Payne's ADEA claim.

## IV.  ERISA

Payne also claims that Southwestern Bell terminated him for the purpose of intentionally interfering with his right to receive future employment benefits in violation of § 510 of ERISA. Section 510 makes it "unlawful for any person to discharge . . . or discriminate against a participant . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled" under an ERISA plan.  29 U.S.C. § 1140;  *Perdue v. Burger King Corp.*, 7 F.3d 1251, 1255 (5th Cir. 1993) (explaining that § 501 is "concerned with acts taken against employees to prevent rights from ripening").

After carefully reviewing the summary judgment evidence and indulging all reasonable

inferences in favor of Payne, the court finds that genuine issues of material fact exist on whether Southwestern Bell had a specific intent to avoid liability under its ERISA plan to Payne, who was a participant in the pension plan, and whether such was a motivating factor in Southwestern Bell's decision to terminate him.  Accordingly, summary judgment will be DENIED on Payne's ERISA § 510 claim.

## V.  CONCLUSION

Therefore, the court GRANTS Southwestern Bell's Motion for Summary Judgment with respect to Payne's ADEA claim, but DENIES Southwestern Bell's Motion for Summary Judgment with respect to Payne's ERISA claim.

**SIGNED this the 8th day of June, 2005.**

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE